GUILLERMO ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; NICOLÁS CALLEJA BETANCOURT, Injured workman.

No. 380. Argued January 13, 1948.—Decided January 29, 1948.

*Angel de Jesús Matos, M. Maldonado Pacheco,* and *Aída Casañas Marengo* for petitioner. *Víctor A. Fernández Garzot* and *Rogelio Fernández Garzot* for injured workman.

Mr. Chief Justice Travieso delivered the opinion of the Court.

Nicolás Calleja Betancourt, a peddler of products manufactured by the Payco Ice Cream Factory, was struck by a truck while he carried said products in a cart, suffering the fracture of his left wrist and of the pelvis. The Manager of the State Insurance Fund denied his claim for compensation, on the ground that between the injured workman and the manufacturer "there did not exist the contractual relation required to consider the petitioner as a regular workman for wages, protected by the Workmen's Accident Compensation Act." The workman thereupon appealed to the Industrial Commission and on June 25, 1947, the Commission rendered a decision holding that at the time of the accident Calleja worked for the employer Payco Ice Cream Factory; that the accident suffered by Calleja arose from an act or function inherent to his work or employment and as a consequence thereof; that the injured workman was entitled to the compensation fixed by the Act. The manager requested a reconsideration of that decision, and upon the same being denied, he instituted the present proceeding and alleged that the Commission erred in deciding that the relationship between Calleja and the Payco concern was that of employer and employee and not that involved in a mere transaction of purchase and sale between the parties.

In order to decide the question raised, we must make a brief summary of the testimony given before the commission.

The injured workman testified that on the day of the accident he conducted a refrigeration cart of the Payco factory in the direction from San Juan to Cataño; that the Payco gave him the cart in order to sell the ice cream and fixed his route, which covered from the town of Cataño up

to Stop 20½ in Santurce, where the factory is located, and he could not deviate from said route because if he did so, the employer would take away the cart from him. The relations between the workman and the Payco concern were described by Calleja as follows: That he asked the petitioner for $20 worth of products and selected 5 boxes of "popsicop," but that the employer always gave him 7 boxes and he had to accept them, as otherwise, no merchandise would be sold to him; that sometimes he asked for $10 worth of products and they gave him $15, and he had to take what the employer wanted and not what he himself wished; that sometimes he asked for a certain kind of product and was given a different one, and that he was compelled to sell the products which the employer chose; that the price of 5 cents for each article was fixed by the employer manufacturer and the peddler workman could not sell it to the public at any other price, higher or lower; that the workman was bound to go every morning, between 8 and 9 o'clock, to fetch his cart, and return at 9:30 P. M. to render accounts; and that if he failed to do so, the cart was taken away from him or he was penalized and no merchandise would be supplied to him for two or three days; that the unsold merchandise, if in good condition, was returned to the factory but if it was spoiled, the workman lost it; that he had to pay for any damage which the cart might suffer and for the tires and tubes that wore out; that he was also bound to follow exactly the instructions given by the employer, because if he did not do so, he was discharged; and that he earned $6 per day, equivalent to a commission of 30 per cent on the daily sales made by him amounting to about $20. Lastly, the injured workman testified that the manufacturer prohibited the peddlers from using liquor or participating in any gambling.

José Gayá, owner of the ice cream factory, testified that the factory was covered by an insurance policy issued by the State Insurance Fund; that Calleja was *his customer,*

because he bought his products at the same price that the factory sold them elsewhere to other customers; that he furnished each peddler with a refrigeration cart, which was necessary to prevent the ice cream from melting; that the peddlers were not compelled in any way to adhere to any schedule of hours of entrance or departure in the business; that said customers have fixed routes over which they sell the merchandise; that the peddlers are not paid a percentage commission but that they buy at the wholesale price paid by other customers who are not supplied with selling carts; that the peddlers have never appeared on the pay rolls as employees of the factory, because none of them has a salary or a fixed commission; that Calleja has never been nor is now employed by his factory and that "the only thing received by Calleja for the sale of the products which we supplied to him was the commission given to him"; that he saw Calleja everyday and knows that he is a peddler of the factory; that he did not inform the State Fund regarding the accident suffered by Calleja because he considered the latter as a customer and not as an employee. The employer admitted that the peddlers had fixed routes assigned by the factory and that when a peddler insisted in deviating from his route then the factory refused to supply him with any more products.

The summary which we have made of the evidence introduced before the Commission shows that there is no controversy as to the facts of the case. Let us analyze those facts in order to determine whether they justify the conclusion reached by the Industrial Commission.

The Payco factory sells its products wholesale to hotels, restaurants, bars, and soda fountains, to which it furnishes electric refrigerators on condition that they shall buy exclusively the Payco products and shall use the refrigerators solely to preserve said products. The sales made by Payco to the above-mentioned establishments are for a fixed price and not on a commission computed on the quantity of products

sold daily. Some of these customers pay for the merchandise. on delivery and others are granted credit for 30 or 60 days.

The relationship between the peddlers of the Payco products and the factory are substantially different from that existing between said factory and the hotels and other fixed establishments. The peddlers do not buy the products at an hour appointed by them, to sell them where, when, and at such price as they may choose. In accordance with the evidence to which the Commission accorded credit, said peddlers are compelled to receive the merchandise between 8:00 and 9:00 A. M., carrying it in carts owned by the factory, and are bound to render accounts of the sales made daily, before 9:30 P. M. on each day; to accept the kind and quantity of products that the factory supplies to them; to sell said products at a price fixed by the factory; not to make any sale outside the route assigned by the factory; and not to drink any liquor or participate in any gambling.

It is true that the peddlers do not receive a fixed salary and that the compensation received by them for their work is computed on the basis of 30 per cent of the selling price of the products sold on a certain day. However, that form of compensation is made necessary by the nature of the services rendered by the workman and for the protection of the interests of the manufacturer of the products. If the peddler, who works outside the inspection or supervision of the manufacturer or of his representative, should receive for his services a fixed salary, his interest in selling the largest possible quantity of products would wane. The determination of the compensation on the basis of a commission on the total sales made each day is an incentive to which the manufacturer resorts in order to encourage the peddler to sell all he can, knowing that his compensation will increase with larger sales.

The appellant manager insists that Calleja was an independent contractor and not an employee of the Payco factory.

In Words and Phrases (Permanent Edition, 1940, vol. 9, pp. 329 *et seq.*), the term "contractor" is distinguished from the word "employee" and defined, thus:

"Where person employing may prescribe what shall be done, but not how it is to be done or who is to do it, employee is 'contractor' and not 'servant,' although work is to be done under direction and to satisfaction of persons representing employer. *Joslin* v. *Idaho Times Pub. Co.*, 53 P.2d 323, 329, 56 Idaho, 242."

Horovitz, in his work "Injury and Death under Workmen's Compensation Laws," 1944 ed., pp. 232–233, states:

" . . . where written or oral contracts purport directly to make independent contractors of workers, without any fraudulent intent, commissions and courts continue to apply the standard common-law test to determine the real relationship,—the authority or right or power of the employer, by reason of any agreement between them, to *control* the person in question, and not the actual exercise of that power, without regard to state or other third-party regulations." (*O'Hara's* Case, 310 Mass. 223.)

The essence of the issue in these cases is whether the employer, by reason of an agreement with the employee, has the right and authority to control and direct the latter in the performance of the work. *Drillon* v. *Industrial Accident Commission*, 17 Cal. 2d 346. See *National Labor Relations Board* v. *Hearst Publications*, 322 U. S. 111, 88 L. ed. 1170 and *United States* v. *Silk*, 331 U. S. 704.

In the work "Schneider Workmen's Compensation Law," vol. 4, chapter 17, §§ 1060–1141, pp. 4–185, the following are established as rules to be followed for the determination of whether the relationship existing between the parties is that of employer and employee:

A. When the employer has the right, even if it be not exercised by him, to direct or control the workman.

B. When the work performed by the workman is comprised within the business of the employer and is not of a distinct character.

C. When both parties are free to end their relationship at any time.

D. Nonexistence of the right of the workman to delegate in another person the performance of his work.

E. Providing of equipment, material, or necessary help to the business by the employer.

If we apply the foregoing rules to the facts of the instant case, the conclusion is unavoidable that Calleja was an employee of the Payco factory. The latter not only furnished him with the cart for the sale of its products but also directed the kind and quantity of the products that the peddler was to receive every day to sell them to the public; it marked out the route over which each peddler had to sell its merchandise; it fixed the selling price of the products; and lastly, it issued the rules to which the peddlers must conform their personal conduct. The fact that Calleja was compensated for his work on the basis of a percentage on the total daily sales is important, but it is not in itself sufficient to decide, discarding all the other circumstances which we have set forth, that the relationship between him and the Payco factory was that of an independent contractor.

This same question has heretofore been considered by this Court on various occasions and decided against the contention of the petitioner manager. In *Tomás* v. *Industrial Commission,* 59 P.R.R. 852, we held that "The fact that the workmen were not paid daily wages for their work but were paid according to the amount of stone quarried by them did not convert such workmen into independent contractors as regards the operator of the quarry." In *Atiles, Mgr.* v. *Industrial Commission,* 63 P.R.R. 573, the owners of a firm contributed wood from which another person made charcoal, which once manufactured, was distributed at the rate of two-thirds for the manufacturer and one-third for the owner of the property. The latter was insured by the State Insurance Fund. We decided that "This Act, when referring to the independent

contractor, always means the one who contracts for a job and employs workmen to accomplish it''; and that ''The workman in this case is not such an independent contractor, but a mere workman who works by contract and whose compensation is paid in specie.'' See *Shields* v. *William Freihofer Baking Co.* (Pa.) 24 A. 2d 54; *Fuller Brush Co.* v. *Industrial Commission of Utah,* 104 P. 2d 201, 129 A.L.R. 511.

For the reasons stated, we think that the Industrial Commission did not err in deciding that the claimant Calleja was, at the time of the accident, an employee of the Payco factory and as such was entitled to be awarded compensation in accordance with the Act.

The decision under review will be affirmed.